USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1697 UNITED STATES, Appellee, v. JONATHAN A. GRANT, II, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Lynch, Circuit Judges. ______________ _____________________ Miriam Conrad, Federal Defender Office, for appellant. _____________ Sheila W. Sawyer, Assistant United States Attorney, with _________________ whom Donald K. Stern, United States Attorney, was on brief for _______________ appellee. ____________________ May 30, 1997 ____________________ TORRUELLA, Chief Judge. On February 28, 1996, TORRUELLA, Chief Judge. _____________ Defendant-Appellant Jonathan Grant ("Grant") entered an unconditional plea of guilty to four counts of being a felon in possession of eleven different firearms in violation of 18 U.S.C. 922(g). Each count stated a different location or a different time of possession of the relevant firearms. Count One charged Grant with possessing three firearms "[o]n or about April 22, 1995, at Fairhaven, . . . Massachusetts." Count Two charged him with possessing two firearms "[o]n or about April 26, 1995, at Fairhaven, . . . Massachusetts." Count Three charged him with possessing two firearms "[o]n or about April 26, 1995, at Westport, . . . Massachusetts." Count Four charged him with possessing four firearms "[o]n or about May 1, 1995, at Westport, . . . Massachusetts."  At the May 31, 1996, sentencing hearing, the district court determined that Grant was an Armed Career Criminal ("ACC") under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e), and accordingly imposed a minimum mandatory sentence of 15 years. In the event that this court determined on appeal that the ACC finding was erroneous, the district court imposed an alternative sentence of a total of fifteen years, ten years for Counts One, Two, and Three, to run concurrently, and five years for Count Four, to run consecutively. As to the district court's first ground, Grant contends that the district court erroneously held that Grant's earlier Massachusetts conviction for carrying a dangerous weapon constituted a violent felony under the ACCA. -2- This allegedly erroneous finding provided the third conviction necessary to deem Grant an ACC. Grant next contends that the district court erred, on its alternative grounds, in enhancing his offense level four levels under U.S.S.G. 2K2.1(b)(5) and abused its discretion when it denied his request to conduct an evidentiary hearing on disputed facts in the Pre-Sentencing Report ("PSR"). Finally, Grant argues that the district court violated his Double Jeopardy rights by imposing a consecutive sentence on Count Four. Because we find that Grant's second and third claims lack merit, and therefore affirm the district court's alternative sentence, we need not reach Grant's ACC argument. BACKGROUND BACKGROUND In presenting the facts, we consult the uncontested portions of the PSR, as well as the sentencing hearing transcript. United States v. Lagasse, 87 F.3d 18, 20 (1st Cir. ______________ _______ 1996). Michael Rivera ("Rivera") agreed to buy guns for Grant, in return for $50 for each gun purchased. Rivera purchased, on Grant's behalf, a total of thirteen guns from licensed gun dealers in Massachusetts. Rivera turned over all thirteen guns to Grant, who paid over $6,400 in cash for the guns. Grant paid Rivera $650 in cash for making the purchases. A federal Alcohol, Tobacco, and Firearms ("ATF") agent, who had received a tip about the purchases from a licensed dealer, interviewed Rivera on May 11, 1995. Rivera agreed to -3- cooperate with federal agents and, on June 2, 1995, introduced Grant to an undercover agent. Grant indicated in a tape recorded conversation with Rivera that he was interested in purchasing five fully automatic Tec-9 firearms with attached silencers, bulletproof vests, and a silencer for a .40-caliber Smith and Wesson pistol that Rivera had purchased for him earlier. As part of the sting operation, Rivera made arrangements with the government agent to purchase these items for Grant. When Grant was arrested by ATF agents at the sham sale, he was carrying the .40-caliber firearm and $3,000 in cash. DISCUSSION DISCUSSION I. Sentence enhancement I. Sentence enhancement Under U.S.S.G. 2K2.1(b)(5), the district court is to impose a four-level enhancement [i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony. The district court found that this enhancement was warranted. Grant contends that the district court abused its discretion when it failed to hold an evidentiary hearing regarding contested portions of the PSR, and that the Section 2K2.1(b)(5) enhancement was unsupported by the remaining uncontested evidence. A. Failure to hold an evidentiary hearing A. Failure to hold an evidentiary hearing -4- We review the district court's failure to hold an evidentiary hearing for abuse of discretion. United States v. ______________ Jim nez Mart nez, 83 F.3d 488, 498 (1st Cir. 1996). ________________ Grant contested some of the facts contained in the PSR, specifically facts derived from an ATF agent's grand jury testimony regarding statements allegedly made by Rivera but that were not contained in Rivera's grand jury testimony or in his written statement to the ATF. These statements assert that the purpose of Grant's firearms purchases was to "arm persons who sold drugs for defendant in the greater New Bedford area." PSR at 25. In the proceedings below, Grant sought an evidentiary hearing into the factual basis for the agent's statements that were not supported by Rivera's own testimony. Grant proffered to the probation department and the sentencing court copies of Rivera's written statement and cited to Rivera's grand jury testimony;1 neither source, Grant argued, indicates Grant's purpose in purchasing the weapons. Grant argued that the  ____________________ 1 Part of Rivera's testimony consisted of the following: Q. Did he tell you what he intended to do with the guns? A. Yes. I think he was -- at one point, he mentioned he was going to get rid of them to his family members and to some friends. Q. Were these individuals who sold drugs with and for Grant? A. Yes, the ones that I know of that he mentioned. Grand Jury Testimony of Michael Rivera at 9. -5- "inconsistency" between the agent's testimony regarding Rivera's statements and Rivera's own statements warranted resolution in an evidentiary hearing. Grant further contends on appeal that neither the statements of Rivera nor those of the ATF agent were sufficiently reliable for the district court to credit them in determining Grant's knowledge or intent regarding the future use of the firearms. Grant asserts that neither Rivera's statement nor Rivera's testimony displayed sufficient knowledge of Grant's state of mind to make the statements reliable for the purposes of this enhancement. He further asserts that the ATF agent's statements are unreliable because they are nothing more than claims regarding an informant's uncorroborated statements. Grant claims that the rationale of this court's decision in United States v. Jim nez _____________ _______ Mart nez applies to his case. See Jim nez Mart nez, 83 F.3d at ________ ___ ________________ 494-95 (finding reliability concerns after the defendant made a proffer contesting the reliability of an informant's statements regarding the defendant's statements because the defendant and the informant did not share a common language). Grant argues that, just as the defendant's uncontested proffer in Jim nez _______ Mart nez sufficiently called into question the reliability of the ________ informant's statements, the ATF agent's statements were sufficiently called into question by Rivera's statements and testimony. The argument fails. There is no "inconsistency" between the ATF agent's statements and Rivera's written statement -6- and grand jury testimony -- the ATF agent's testimony regarding statements made by Rivera in the context of the investigation is consistent with the testimony provided by Rivera. Moreover, at the end of his grand jury testimony, Rivera stated that he was engaged in ongoing discussions with the ATF that encompassed subjects beyond those to which he had testified. More fundamentally, Grant made no proffer regarding any possible, let alone relevant or material, evidence that would be brought forward at an evidentiary hearing. Without a reason to believe that any benefit would derive from convening an evidentiary hearing, the district court surely did not abuse its discretion in refusing Grant's request. B. Failure to resolve factual disputes B. Failure to resolve factual disputes Prior to sentencing, Grant objected to various facts in the PSR. Grant argues that the district court failed to comply with Federal Rule of Criminal Procedure 32(c)(1), which requires a sentencing court that is presented with a factual dispute to make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons. Fed. R. Crim. P. 32(c)(1). We have held that the strictures of Rule 32(c)(1) bind the sentencing court to compliance. See ___ United States v. Bruckman, 874 F.2d 57, 64 (1st Cir. 1989) ______________ ________ (finding a violation of Rule 32[(c)(1)] when the district court fails to make or append such findings); United States v. Hanono- _____________ _______ -7- Surujun, 914 F.2d 15, 18 (1st Cir. 1990) (collecting cases). The _______ purposes of this rule are two-fold: (1) to protect "a defendant's due process rights to be sentenced on the basis of accurate information"; and (2) to provide "a clear record of the disposition of controverted facts in the presentence report, which, in turn, reduces the likelihood that subsequent appellate or administrative decisions will be made based on improper or incomplete information." Bruckman, 874 F.2d at 63-64. ________ With regard to the first concern, we have held, however, that "a court may make implicit findings with regard to sentencing matters." United States v. Ovalle-M rquez, 36 F.3d ______________ ______________ 212, 227 (1st Cir. 1994); accord United States v. Cruz, 981 F.2d ______ _____________ ____ 613, 619 (1st Cir. 1992) ("A court may make implicit findings on disputed factual questions by accepting the government's recommendations at the sentencing hearing." (internal quotations omitted)). During the sentencing hearing, the court gave each party the opportunity to discuss the basis for relying on the ATF agent's testimony regarding what Rivera had told him when Rivera's own words did not include the same statements. The contested statements concerned Grant's alleged knowledge that he was giving the firearms to individuals who would use them in connection with a felony. After both parties were heard on the statements of the ATF agent and the informant, the district court ruled that Grant "had reason to believe that the weapons would be used or possessed in connection with another felony offense." Transcript of Sentencing Hearing at 26. The court indicated in -8- writing, as part of the judgment, that it "adopt[ed] the factual findings . . . in the presentence report." We find this case virtually indistinguishable from United States v. Savoie, 985 ______________ ______ F.2d 612, 621 (1st Cir. 1993), which found, on similar, if not identical, facts, that the sentencing court had implicitly ruled that the contested statements were sufficiently reliable. Under Savoie, the district court's ruling and written adoption of the ______ PSR amounts "necessarily [to a] finding against [Grant] on all disputed matters of fact," id., that are the subject of this ___ appeal. Moreover, although Grant objected to certain facts in the PSR that stated he had the requisite knowledge, Grant did not provide the sentencing court with evidence to rebut the factual assertions that he was in charge of a drug operation in the New Bedford area and that he intended to provide the firearms to friends and family members in furtherance of their work in that operation. Consequently, the court was justified in relying on the contested facts. See United States v. Mir, 919 F.2d 940, 943 ___ _____________ ___ (5th Cir. 1990) (explaining that, although defendant objected to facts contained in the PSR, his failure to present rebuttal evidence to refute those facts left the district court free to adopt the facts contained in the PSR without further inquiry), cited in United States v. Morillo, 8 F.3d 864, 873 (1st Cir. ________ _____________ _______ 1993); United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). _____________ ____ Having concluded that the court implicitly resolved these factual disputes, we turn to the second concern implicated -9- by Rule 32(c)(1), namely that a court's determination be appended to the PSR. Although the district court implicitly resolved the factual disputes, it failed to comply with Rule 32(c)(1)'s mandate that the sentencing court append to the PSR either a determination regarding the contested facts or a statement that the contested facts were not considered in reaching the sentence. Consequently, we remand to the sentencing court to allow it to append its determination. Cruz, 981 F.2d at 619 (explaining ____ that, where the sentencing court merely fails to append its findings, remanding without resentencing is appropriate); United ______ States v. Santana-Camacho, 931 F.2d 966, 969 (1st Cir. 1991) ______ _______________ (finding "technical" failure to append findings to PSR did not entitle appellant to resentencing). C. Support for the enhancement C. Support for the enhancement We review the sentencing court's interpretation of the sentencing guidelines de novo and its factual conclusions, which _______ must be supported by a preponderance of the evidence, for clear error. United States v. Ruiz, 105 F.3d 1492, 1504 (1st Cir. _____________ ____ 1997). Having concluded that the district court was entitled to rely on all of the facts provided in the PSR, we review its imposition of the four-level enhancement under U.S.S.G.  2K2.1(b)(5) in light of the facts contained in the PSR. The findings on which the sentencing court relied for the four-level enhancement were supported by the factual statements in the PSR and amply justify the enhancement. See ___ United States v. Van, 87 F.3d 1, 3 (1st Cir. 1996) ("In the ______________ ___ -10- absence of legal error, the district court's ruling will be sustained so long as the information upon which it relied is sufficient to support the findings under a clearly erroneous standard."). According to the PSR, Grant was a drug dealer who used friends and family members to distribute drugs. He indicated to his "gopher" in the firearms transactions, Rivera, that he needed the firearms to protect him and his associates in connection with the drug operation. These facts alone support the sentencing court's finding that Grant possessed or transferred the firearms "with knowledge, intent, or reason to believe that [they] would be used or possessed in connection with another felony." U.S.S.G. 2K2.1(b)(5). We find no error here. II. Double Jeopardy challenge II. Double Jeopardy challenge The Double Jeopardy Clause states: "[N]or shall any person for the same offense be twice put in jeopardy of life or limb." U.S. Const. amend. V. In the context of sentencing, the Double Jeopardy Clause bars a sentencing court from imposing multiple punishments for the same offense. See Rutledge v. ___ ________ United States, 116 S. Ct. 1241, 1245 (1996). Grant contends that _____________ the imposition of consecutive sentences for four counts that amounted to the same offense violates this principle. The government responds that Grant waived any challenge to the indictment on Double Jeopardy grounds by his plea agreement and unconditional plea of guilty to all four counts in the indictment. It argues in the alternative that if Grant is permitted to pursue a Double Jeopardy challenge to his sentence, -11- to prevail he must establish that the felon-in-possession charges in the indictment were facially multiplicitous. We reject the government's initial argument. The caselaw establishes that a defendant may under certain circumstances mount a Double Jeopardy challenge to a sentence arising out of a conviction to which he pled guilty. United ______ States v. Broce, 488 U.S. 563, 576 (1989); Menna v. New York, 423 ______ _____ _____ ________ U.S. 61, 63 n.2 (1975) (per curiam); Blackledge v. Perry, 417 __________ _____ U.S. 21 (1974). The government's focus here on the plea agreement in addition to the plea itself does not advance the argument or provide an exception to the general principle. The government's alternative argument is correct. Grant must show that the indictment was facially multiplicitous to prevail on his Double Jeopardy challenge. When a criminal defendant pleads guilty, he admits not only that he committed the factual predicate underlying his conviction, but also "'that he committed the crime charged against him.'" Broce, 488 U.S. at 569 (quoting North Carolina v. _____ ______________ Alford, 400 U.S. 25, 32 (1970)). "Just as a defendant who pleads ______ guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate offenses." Id. at 570. ___ At the plea hearing, the district court repeatedly directed Grant's attention to the fact that he had been charged with four different crimes. See Transcript of Change of Plea ___ -12- Hearing, Feb. 28, 1996, at 6, 11. After being so apprised, Grant entered an unconditional plea on each count. Having conceded the facts in the indictment, he cannot now contend that the counts constitute the same offense unless they are facially multiplicitous. Here, the facial allegations of the four counts consisted of distinct offenses, charging Grant with the possession of eleven different weapons in two separate cities on three different dates. While it is true that Counts Two and Three charge Grant with possession of certain weapons on the same day, the two counts allege possession of different weapons in different cities. Count Two alleges possession in Fairhaven of two Glock semi-automatic pistols, and Count Three alleges possession in Westport of another Glock semi-automatic pistol (with a different serial number from either of the two other Glocks) and a Ruger semi-automatic pistol. Grant's guilty plea constituted an admission to each of the distinct factual predicates underlying the separate counts and, consequently, the plea "conceded guilt to [four] separate offenses." Broce, 488 _____ U.S. at 571. The four counts being distinct from one another in time, place, or both, and weapon possessed, they are not facially multiplicitous. Grant's efforts to dodge this conclusion are two-fold. First, he contends that, because neither the PSR nor the plea colloquy establish where Rivera turned the firearms over to Grant, we must disregard the distinction between the reference in -13- Counts One and Two to possession of different firearms in Fairhaven and the reference in Counts Three and Four to possession of other firearms in Westport. Because Grant's guilty plea to all four counts conceded that his possession of the different firearms took place in the locations alleged in each count, however, no such showing was required. Grant's second argument is that the sentencing court found that the possession of these weapons amounted to a single course of conduct. Accordingly, Grant reasons, the acts alleged in the four separate counts constitute this single course of conduct, making them the same offense for Double Jeopardy purposes. Again, Grant's argument fails. First, Grant's claim that the district court made a finding that his possession of these firearms constituted a single scheme or course of conduct is belied by the record. Second, the four separate counts simply do not allege simultaneous possession. The two multiple possession cases on which Grant relies, United States v. Mullins, 698 F.2d 686, 687 (4th Cir. _____________ _______ 1983), and United States v. Frankenberry, 696 F.2d 239, 245 (3d _____________ ____________ Cir. 1982), are different from his situation in one dispositive way. In those two cases, the defendants were tried on and convicted of the multiple possession counts. Here, in contrast, Grant pled guilty to each separate offense and thereby admitted the factual predicates underlying the offense. He cannot now argue that a factual issue remains regarding the location or time -14- of his possession of these different firearms. See Broce, 488 ___ _____ U.S. at 569-71. Based on the foregoing, we reject Grant's Double Jeopardy challenge and affirm the district court's imposition of a five year sentence on Count Four to run consecutively to the concurrent ten year sentences imposed on Counts One, Two, and Three. CONCLUSION CONCLUSION For the foregoing reasons, we affirm Grant's sentence affirm ______ and remand to the district court to append to the PSR its remand ______ findings regarding contested facts. -15-